UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARTIE R. JACKSON,

                           Plaintiff,

                    -against-

SHERIFF SPOSATO,
JOHN DOES, maintenance workers,
CORPORAL RUBEN AND OFFICER HILTON,

                        Defendants.
------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
15-CV-2764 (JMA) (AYS)

FILED
CLERK
3/16/2017 10:13 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Incarcerated pro se plaintiff, Artie Jackson, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sheriff Sposato, correctional officers Ruben and Hilton, and John Doe maintenance workers were deliberately indifferent to his serious medical needs when they failed to order an MRI as treatment for a slip and fall.  Before the Court is defendant Sposato's motion to dismiss the complaint against him in its entirety for failure to state a claim and for plaintiff's alleged failure to exhaust his administrative remedies.  In the alternative, defendant Sposato moves for summary judgment on the basis that plaintiff has failed to exhaust his administrative remedies. For the reasons set forth below, the Court finds that plaintiff has failed to state any plausible claims. Accordingly, the Court grants defendant Sposato's motion to dismiss the amended complaint as to defendant Sposato pursuant to Rule 12(b)(6), and then sua sponte dismisses all claims against the remaining defendants pursuant to the in forma pauperis statute.  With respect to the exhaustion issue, the Court converts the motion to dismiss on that ground to a motion for summary judgment, and then grants the motion for summary judgment.  The Court finds that the Prison Litigation Reform Act ("PLRA") bars all of plaintiff's claims because plaintiff has failed to exhaust his

1

administrative remedies.

## I. BACKGROUND

### A. The April 7, 2015 Incident

At around 9:00 a.m. on April 7, 2015, Artie Jackson, an inmate incarcerated at Nassau County Correctional Center ("NCCC"), exited his cell and slipped and fell on a puddle of water. (Am. Compl. at 3, ECF No. 17.)[1] Plaintiff alerted two officers, defendant Corporal Ruben and defendant Officer Hilton, about his fall. (Id.) After asking plaintiff if he was injured, the officers filled out an incident report and escorted plaintiff to NCCC's medical area. (Id. at 3–4.) Once plaintiff arrived at the medical area, he was examined by a doctor. (Id. at 4.) Plaintiff reported pain in his back, hip, and knee. (Id.) The doctor informed plaintiff that he would order an x-ray. (Id.) Plaintiff additionally requested an MRI. The doctor replied that he "doubt[ed] the jail would give [plaintiff] one do [sic] to the cost," and declined to order an MRI. (Id.) The doctor then gave plaintiff a 14-day prescription for Motrin, and plaintiff returned to his cell. (Id.)

### B. Plaintiff's Grievances

Once plaintiff returned to his cell, he filed a grievance requesting an x-ray of his back and hip. (Id.; April 7, 2015 Grievance, Decl. of John J. Doody, Ex. B, ECF No. 48–2.) That grievance was accepted by the NCCC's Grievance Coordinator. (April 7, 2015 Grievance) And, it is undisputed that, at some point, plaintiff did, in fact, receive the x-ray he requested. (See Am. Compl. at 4–5.) After receiving the x-ray, plaintiff continued to have pain in his back and hip. (Id. at 5.) Plaintiff then filed two more grievances on April 25, 2015 and April 27, 2015. (Id.) In plaintiff's own words:

> On (April 25 & April 27 2015) Plaintiff (Artie R. Jackson) presented the facts relating to this Complaint. On April 27 & the other grievance was unheard Plaintiff

---

[1] All facts, unless otherwise stated, are taken from plaintiff's amended complaint, which the Court assumes to be true when deciding the instant motion to dismiss.

2

> Artie R. Jackson was sent a response saying that the grievance had been denied. On April 29th 2015 the plaintiff was sent to downstate and never got a chance's [sic] to appeal the denial of the grievance.

(Id.)  Neither of these grievances are in the record.[2]  It is unclear from the current record whether plaintiff received responses to both of these grievances.  It is, however, undisputed that plaintiff received a response from the Grievance Coordinator denying at least one of the grievances.  (Id.)  Plaintiff also concedes that he never appealed this denial.  (Id.; Pre-Motion Conference, FTR 11:03:16, ECF No. 44.)  In an attempt to excuse his failure to appeal this denial, plaintiff claims that he was transferred to a state facility on April 29, 2015 and "never got a chance[]" to appeal the denial.  (Am. Compl. at 5.)  Also, at a pre-motion conference before this Court, plaintiff asserted that he did not know he could appeal a county grievance while in state custody.  (Pre-Motion Conference, FTR 11:03:16.)

## C. Procedural History

Plaintiff initially filed this complaint on April 28, 2015, alleging that defendants violated his constitutional rights when they failed to provide him with the MRI he had requested. (Compl., ECF No. 1.)  Plaintiff's complaint was received and docketed on April 30, 2015.  (Id.)  On June 29, 2015, the Court permitted plaintiff to amend his complaint to add:  (1) allegations concerning defendant Sheriff Sposato's personal involvement in the April 7, 2015 incident; and (2) allegations concerning the personal involvement of the unnamed defendants in the April 7, 2015 incident. (ECF No. 11.)  Plaintiff drafted an amended complaint on August 17, 2015, which was received and docketed on August 24, 2015. (ECF No. 17.)  Currently pending before the Court is defendant Sposato's motion to dismiss the amended complaint.  (ECF No. 48.)  Sposato has also moved, in

---

[2] Because plaintiff does not allege the specific contents of each grievance, and neither grievance is in the record, the Court, viewing the record in the light most favorable to plaintiff, assumes that both grievances requested an MRI as treatment for plaintiff's April 7, 2015 slip and fall.

3

the alternative, for summary judgment on the question of exhaustion. (Id.)

## II. DISCUSSION

### A. Deliberate Indifference to Serious Medical Needs

The Court dismisses plaintiff's amended complaint because plaintiff fails to state a plausible claim for deliberate indifference to serious medical needs against any of the defendants.[3]

In determining whether plaintiff has alleged plausible claims, the Court has only considered the allegations in the amended complaint.[4]

#### 1. Standard for Motion to Dismiss

A district court is required to screen a civil complaint brought by a prisoner against a governmental entity or its agents and to dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915A(b)(1). Similarly, pursuant to the in forma pauperis statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when

---

[3] To the extent plaintiff's amended complaint can be construed as asserting § 1983 claims based on defendants' negligence in connection with the water on the floor, these claims are sua sponte dismissed for the reasons stated in the Court's June 29, 2015 Order. (June 29, 2015 Order at 6–7, ECF No. 11.)

[4] The only additional evidence upon which Sposato relies for his summary judgment motion is (1) the April 7, 2015 grievance and (2) statements made by plaintiff during the January 28, 2016 pre-motion conference regarding the alleged grievances. None of these grievances were addressed to or delivered to any of the defendants. Accordingly, none of this additional evidence is relevant to the question of whether the amended complaint, on its face, plausibly alleges claims for deliberate indifference against the defendants.

4

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### 2. Standard for Establishing Liability on a Deliberate Indifference Claim under the Eighth Amendment

"To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[T]he deliberate indifference standard embodies both an objective and subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

The objective prong involves two elements. First, a plaintiff must allege he was "actually deprived of adequate medical care," Wright v. Genovese, 694 F. Supp. 2d 137, 154 (N.D.N.Y 2010) (citing Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)). Second, the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway, 99 F.3d at 553 (internal quotation marks omitted). "[W]here the inadequacy is in the medical treatment that was actually afforded to the inmate," rather than a total denial of any treatment, then the "seriousness" inquiry focuses

5

on the injury attributable to the challenged treatment, not the underlying condition. Wright, 694 F. Supp. 2d at 154.

The subjective prong requires a prisoner to show that a defendant acted with a "sufficiently culpable state of mind." Id. (quoting Salahuddin, 467 U.S. at 280). This element "entails something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). In other words, "[d]eliberate indifference is equivalent to subjective recklessness." Wright, 694 F. Supp. 2d at 154 (citing Salahuddin, 467 F.3d at 280).

Furthermore, in order for an individual defendant to be held liable under § 1983, plaintiff must establish that the defendant was personally involved in the violation. Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). In Colon v. Coughlin, the Second Circuit identified five ways to demonstrate a supervisory defendant's personal involvement: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). The Circuit has yet to determine whether the Supreme Court's decision in Iqbal, 556 U.S. 662, altered the requirements for showing supervisory liability under Colon. See Shaw v. Prindle, 661 F. App'x. 16, 18 n.2 (2d Cir. 2016) (citing Grullon, 720 F.3d at 139). The Court need not resolve that difficult question here because plaintiffs fail to plead Sposato's personal involvement in the alleged

deprivation even under Colon.

### 3. Plaintiff Fails to Allege Plausible Claims

Even assuming that plaintiff has satisfied the objective prong,[5] plaintiff's claim against Sposato must be dismissed because plaintiff does not plausibly allege that Sposato acted with a culpable mental state. In other words, plaintiff fails to allege any facts that suggest that Sposato knew of, or disregarded, an excessive risk to plaintiff's health or safety caused by the doctor's refusal to give plaintiff an MRI. Plaintiff does not allege that Sposato knew about: (1) the April 7, 2015 incident; (2) the treatment plaintiff received; (3) the denied request for an MRI; or (4) any of the grievances that plaintiff filed. Because Sposato, as alleged, had no knowledge of plaintiff's medical treatment, the Court cannot say that Sposato acted with conscious disregard for his rights.

Plaintiff also fails to plausibly allege Sposato is liable under any theory of supervisory liability. Plaintiff alleges simply that: "Sheriff Sposato of the [NCCC], He is legally responsible for the operation and making sure the maintenance of the facility is up to code, as well as the welfare of all the inmates in the facility at [NCCC]." (Am. Compl. at 2.) As explained above, plaintiff fails to allege any facts that suggest Sposato directly participated in, or was even aware of, plaintiff's injury, treatment, or grievances. Plaintiff also fails to allege any other facts that could trigger potential supervisory liability under the theories set out in Colon. 58 F.3d at 873.

The only potential theory of supervisory liability that plaintiff's amended complaint might implicate is liability for creating a policy or custom under which unconstitutional practices

---

[5] The Court doubts that plaintiff has plausibly pled sufficient facts to establish the objective prong of his claim. Specifically, the Court doubts that the failure to prescribe an MRI—especially when a plaintiff has already received a physical examination by a medical professional, an x-ray of the affected area, and a prescription for Motrin—constitutes an actual deprivation of adequate medical care. See Wright, 694 F. Supp. 2d at 155 (N.D.N.Y 2010) ("[D]isagreement with prescribed treatment does not rise to the level of a constitutional claim."); id. ("[A]ny claims of malpractice, or disagreement with treatment are not actionable under Section 1983."). Moreover, the fact that a plaintiff continues to experience pain from a slip and fall is not enough to show that he has suffered a "sufficiently serious" injury as a result of being denied one particular course of treatment—here, an MRI. Nonetheless, the Court will assume that plaintiff has alleged a sufficiently serious injury.

7

occurred, or allowing the policy or custom to continue. Plaintiff alleges that he requested an MRI and the doctor said he "doubt[ed] the jail would give [plaintiff] one do [sic] to the cost." (Am. Compl. at 4.) That allegation, however, is insufficient to plausibly allege that such a policy exists, or, more importantly, that Sposato had any personal involvement in promulgating such a policy. Accordingly, the Court finds that plaintiff has not plausibly alleged any policy or custom sufficient to render Sposato liable as a supervisor.

Plaintiff also fails to allege any facts that suggest that Corporal Ruben, Officer Hilton, or the John Doe maintenance workers acted with a culpable mental state or had any personal involvement in the alleged violation.

Plaintiff does not allege that these defendants knew about: (1) the treatment plaintiff received; (2) the denied request for an MRI; or (3) any of the grievances that plaintiff filed. In other words, plaintiff fails to allege any facts that suggest Ruben, Hilton, or the John Does knew of, and disregarded, an excessive risk to plaintiff's health or safety caused by the doctor's refusal to give plaintiff an MRI. Because these defendants, as alleged, had no knowledge of plaintiff's medical treatment, the Court cannot say that they acted with conscious disregard for plaintiff's right to adequate medical care.

Plaintiff has also failed to plausibly allege that the remaining defendants were personally involved in the alleged violation of plaintiff's rights. At most, plaintiff alleges that Ruben and Hilton were aware of his fall and transported him to the medical unit on April 7, 2015. Plaintiff does not, however, allege that Ruben and Hilton participated in any treatment or treatment decisions once they arrived at the medical unit. Plaintiff's allegations against the John Does are even thinner. For instance, plaintiff fails to allege that these defendants even knew about his April 7, 2015 slip and fall.

8

In response to the motion to dismiss, plaintiff argues that "once discovery is completed, [he] will tell the district attorney in detail how each one named in [his] Complaint violated [his] constitutional right." (Pl.'s Opp'n at 2, ECF No. 48-8.) This argument cannot save plaintiff's claims—plaintiff is required to allege plausible claims in his amended complaint and cannot wait until discovery to remedy the pleading defects identified above.

Accordingly, the Court grants defendant Sposato's motion to dismiss pursuant to Rule 12(b)(6) and sua sponte dismisses plaintiff's claims against the remaining defendants for failure to state a claim.

### B. Exhaustion of Administrative Remedies

The Court also grants summary judgment on all of plaintiff's claims because plaintiff has failed to exhaust his administrative remedies. Defendant Sheriff Sposato moves to dismiss plaintiff's complaint in its entirety because plaintiff failed to exhaust the administrative remedies available at NCCC prior to commencing this action. In the event the Court considers material outside of the pleadings, Sposato asks the Court to convert his motion to dismiss to one for summary judgment and to grant the motion for summary judgment.

In response, plaintiff argues only that "[g]rievances are used to inform the Athourities theirs [sic] a problem, and if the Authourities does [sic] not fix that problem, they are at fault and not me." (Id.) Plaintiff does not argue: (1) that he sufficiently exhausted his remedies; or (2) that the administrative remedies cited by Sposato were unavailable to him.

In an abundance of caution, the Court converts Sposato's motion to dismiss to one for summary judgment and then grants the motion for summary judgment.

#### 1. Conversion to Summary Judgment

"Like other affirmative defenses, failure to exhaust may be grounds for dismissal under

9

Rule 12(b)(6) of the Federal Rules of Civil Procedure if the defense appears on the face of the complaint." Henrius v. Cty. of Nassau, No. 13-CV-1192, 2016 WL 1296215, at *6 (Mar. 31, 2016) (collecting cases). "[I]f nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion . . . ." McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

"When the court converts a Rule 12(b)(6) motion into one for summary judgment, it must 'afford all parties the opportunity to present supporting material.'" Mateo, 2010 WL 3199690, at *3 (quoting Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000)). A formal notice from the court concerning the possibility of conversion is unnecessary where the parties had sufficient opportunity to present materials relevant to the summary judgment motion. See In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether [a party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."). A plaintiff receives sufficient notice that a motion may be converted where a defendant attaches extrinsic materials to a motion and notifies the plaintiff that "the Court might choose to treat the motion as one for summary judgment, and that to oppose it, [plaintiff] would need to submit evidence such as affidavits." Mateo, 2010 WL 3199690, at *3.

Here, plaintiff received sufficient notice that the motion could be converted. When Sposato served the motion on plaintiff, Sposato notified plaintiff that the Court may convert this motion to one for summary judgment and that, to properly oppose the motion, plaintiff would need to submit evidence, such as affidavits. (ECF No. 48-4); see also Mateo, 2010 WL 3199690, at *3. Sposato also attached extrinsic materials to his opening brief. (ECF No. 48); see also Mateo, 2010 WL

10

3199690, at *3. Furthermore, Sposato moved to dismiss specifically on exhaustion, and plaintiff addresses this point in his response. See McCoy, 255 F. Supp. 2d at 255. The Court finds that plaintiff had notice and an opportunity to be heard on the possibility of conversion and converts Sposato's motion to dismiss to one for summary judgment.[6]

The Court notes that it is possible that conversion would not be necessary because plaintiff's failure to exhaust may be clearly evident from the face of the amended complaint and from other evidence that could be considered referenced in or integral to the complaint (and, thus, could be appropriately considered on a motion to dismiss). Nevertheless, in an abundance of caution, the Court will covert this motion to one for summary judgment. See Mateo, 2010 WL 3199690, at *3.

**2. Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a

---

[6] The Court notes that on the back of his opposition brief, plaintiff writes: "Your Honor: Im not able to get to law library to see notary." (Pl.'s Opp'n at 4.) It appears that this handwritten note is offered to explain why plaintiff's affidavit of service is not notarized. To the extent this note can be construed as a purported excuse for why plaintiff has failed to submit an affidavit in opposition to the summary judgment motion, this excuse is insufficient to preclude conversion of the motion here. Critically, plaintiff fails to identify any evidence he would have introduced if he had access to a notary.

11

verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . ." Marvel Characters, 310 F.3d at 286 (citing Matsushita, 475 U.S. at 587; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)).[7]  To defeat a properly supported motion for summary judgment, "the non[-]moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted).  Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment.  See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).  Unless the non-moving party produces significant probative evidence demonstrating that a factual dispute exists, summary judgment is appropriate. Anderson, 477 U.S. at 249–50.

### 3. Standard for Exhaustion

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  In order to exhaust available remedies, an inmate must comply with a facility's deadlines and other procedural

---

[7] Because Sposato has moved for summary judgment, the Court examines the evidence in the light most favorable to, and draws all inferences in favor of, plaintiff.

12

rules. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Prior to 2016, courts in this Circuit excused exhaustion where "special circumstances" were plausibly alleged. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). An inmate's mistaken, but reasonable interpretation of a prison's unclear grievance procedure was considered to be just such a special circumstance. See id. at 690–91.

In 2016, the Supreme Court squarely rejected this approach. Ross v. Blake, 136 S. Ct. 1850 (2016). In Ross, the Supreme Court held that the only exception to the PLRA's exhaustion requirement is the one "baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 1862. Courts have recognized that remedies may be unavailable under three circumstances:

- [A]n administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."

- "[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." In other words "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."

- [A]n administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Williams v. Correction Officer Priatno, 829 F.3d 118, 123–24 (2d Cir. 2016) (citing Ross, 136 S. Ct. at 1859–60). These three circumstances are not considered to be exhaustive. Id. at 123 n.2.

Failure to exhaust is an affirmative defense. Accordingly, defendants bear the burden of providing the Court with "'legally sufficient sources' such as statutes, regulations, or grievance procedures' which demonstrate that 'a grievance process exists and applies to the underlying dispute.'" Id. at 126 n.6 (quoting Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015)). "Existence of a question of fact as to the availability of prison procedure may preclude

13

summary judgment on the issue of exhaustion." Winfield v. DeRosso, No. 07-CV-4570, 2016 WL 5793195 (E.D.N.Y. July 8, 2016) (report and recommendation), adopted by 2016 WL 5678454 (E.D.N.Y. Sept. 30, 2016). An inmate's mistaken interpretation of a grievance procedure, however, is insufficient absent a finding that the procedure is so opaque that it becomes incapable of use. Ross, 136 S. Ct. at 1858–60.

### 4. Analysis

#### i. NCCC's Grievance Procedure

Plaintiff does not dispute that NCCC has made the following formal grievance procedure available to inmates:

- An inmate with a grievance may (but is not required to) attempt to resolve a grievance in an informal matter.

- If dissatisfied with this process, he may file a grievance form to be reviewed by the Grievance Coordinator within five days of the incident giving rise to the grievance.

- The Grievance Coordinator is required to make a written determination within five days.

- If an inmate is dissatisfied with the Grievance Coordinator's determination, the inmate may appeal to the Chief Administration Officer within two days.

- If the appeal results in an unfavorable decision, an inmate may appeal this determination to the State Commission of Correction within three days.[8]

Medina v. Nassau Cty. Sherriff Dep't, No. 11-CV-228, 2013 WL 4832803, at *5 (E.D.N.Y. Sept.

---

[8] Although plaintiff does not dispute the existence and terms of NCCC's grievance procedure outlined above, defendant has not submitted a copy of the procedure into the record. Instead, defendant refers the Court to Young v. Sposato, No. 12-CV-2850, 2014 WL 109083, at *5 n.6 (E.D.N.Y. Jan. 13, 2014), wherein the district court observed that "courts consistently have accepted the provisions of NCCC's grievance procedure in adjudicating prisoner claims." The Young court, in turn, refers to Medina v. Nassau Cty. Sherriff Dep't, No 11-CV-228, 2013 WL 4832803, at *5 (E.D.N.Y. Sept. 10, 2013), which recounts the provisions of NCCC's procedure in detail. Notably, the plaintiff's April 7, 2015 grievance form is completely consistent with the procedures outlined in Medina. See Young, 2013 WL 4832803, at *3 n.4; see also Henrius, 2016 WL 1296215, at *6 (describing NCCC grievance procedure and citing N.Y. Comp. Codes R. & Regs., tit. 9, §§ 7032.2; 7032.4; 7032.5).

14

10, 2013); Young v. Sposato, No. 12-CV-2850, 2014 WL 109083, at *3 (E.D.N.Y. Jan. 13, 2014).

### ii. Availability of Administrative Remedies

Plaintiff does not argue that the administrative remedies described above were unavailable to him. Moreover, defendant Sposato has introduced the April 7, 2015 grievance filed by plaintiff, which indicates that these remedies were, in fact, available to him. See Riles v. Buchanan, 656 F. App'x 577, 581 (2d Cir. 2016); Mateo, 2010 WL 3199690, at *3 ("[Administrative remedies] could not have been unavailable to [plaintiff] if, as he claims, he resorted to them . . . .").

### iii. April 7, 2015 Grievance

This grievance, which requests an x-ray as treatment for plaintiff's April 7, 2015 slip and fall, was timely. It was filed the same day as the incident, and so comfortably fits within the five-day limitation set out by NCCC's procedures. This grievance was "accepted" by the Grievance Coordinator, and plaintiff concedes that he eventually received the relief sought—i.e., an x-ray.

Nonetheless, this grievance cannot serve as a basis for exhaustion of plaintiff's claim. This grievance—which requests an x-ray, not an MRI—does not speak to the claim currently before the Court—i.e., plaintiff's claim of deliberate indifference based on the failure to prescribe an MRI.

### iv. The April 25, 2015 and the April 27, 2015 Grievances

Plaintiff also filed grievances on April 25, 2015 and April 27, 2015. The Court assumes that both of these grievances requested an MRI as treatment for plaintiff's April 7, 2015 slip and fall.[9]

Plaintiff conceded, both in his amended complaint and again at the pre-motion conference

---

[9] Although not raised by defendant, the Court notes that, pursuant to the procedure outlined above, plaintiff had five days to file a grievance related from the date of the slip and fall and denial of his request for an MRI. In other words, plaintiff must have filed all grievances related to the MRI denial by April 12, 2015 in order to properly exhaust his administrative remedies. Because the April 25, 2015 and April 27, 2015 grievances were filed move than five days after the incident and denial of plaintiff's request for an MRI, both grievances appear to be untimely.

15

held before this Court, that he failed to appeal the denial of one of these two grievances to the Chief Administration Officer. Viewing the record in the light most favorable to plaintiff, the Court assumes that plaintiff failed to appeal the denial of the April 27, 2015 grievance to the Chief Administration Officer.

Plaintiff's attempt to excuse his failure to appeal the April 27, 2015 grievance is unavailing. At the pre-motion conference, Plaintiff stated that that he did not know he could appeal a grievance filed in a county facility after he was transferred to a state facility. This excuse, however, is simply insufficient to excuse exhaustion after Ross.[10]

The only remaining question is whether plaintiff could have exhausted his claims based on the April 25, 2015 grievance. As explained below, plaintiff could not have possibly exhausted his claims prior to filing the instant lawsuit. Plaintiff filed this grievance on April 25, 2015, and signed his court complaint a mere three days later on April 28, 2015. It appears that plaintiff's complaint was mailed out that same day. The complaint was received and docketed by this Court on April 30, 2015. "There is simply no scenario in which plaintiff could have filed his grievance, received a decision, filed an appeal to the Chief Administration Officer, received a decision, and filed another appeal to the State Commission of Correction in just three days." Medina, 2013 WL 4832803, at *5. No reasonable juror could find that plaintiff exhausted all three levels of appeal during: (1) the three days that elapsed between the date he filed this grievance and the date he signed and mailed his court complaint; or (2) the five days that elapsed between the filing of this grievance and the filing of plaintiff's suit in federal court.

---

[10] Plaintiff has not argued—or offered any evidence—to indicate that his belief about his inability to appeal was the result of any opaque or misleading language in the NCCC's grievance procedures. Also, plaintiff does not assert that these grievance procedures failed to address appeals by prisoners who are transferred after filing a grievance. Accordingly, it is unnecessary to consider how any such potential flaws in the grievance procedures would be analyzed under Ross. Cf. Williams, 829 F.3d at 124–27.

16

Because no reasonable juror could find that plaintiff exhausted his administrative remedies concerning the April 7, 2015, April 25, 2015, and April 27, 2015 grievances, the Court grants defendant Sposato's motion for summary judgment on all claims. Although the remaining defendants have not explicitly moved for summary judgment on the basis of exhaustion, the Court's exhaustion ruling necessitates dismissal of the remaining defendants because plaintiff similarly failed to exhaust his claims against those defendants.

## C. Leave to Amend

It is unnecessary to consider whether the Court should grant plaintiff leave to amend his amended complaint to allow him to attempt to cure the pleading deficiencies identified in Section II.A.3 above because the Court is also granting summary judgment on the question of exhaustion. Nevertheless, the Court notes that plaintiff has already amended his complaint once and nothing before the Court suggests that plaintiff would be able to amend his complaint in a manner that would state plausible claims against any of the defendants.

## III. CONCLUSION

For the reasons set forth above, the Court dismisses the amended complaint in its entirety because plaintiff has failed to plausibly state claims against any of the defendants. The Court also converts defendant Sposato's motion to dismiss for failure to exhaust to a motion for summary judgment, and then grants that motion. The Court finds that the PLRA bars all of plaintiff's claims against all of the defendants because plaintiff has failed to exhaust his administrative remedies.

The Clerk of Court is directed to close this case and to send a copy of this Order and a copy of the Court's June 29, 2015 Order, (ECF No. 11), to the pro se plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED**.

Date:   March 16, 2017
        Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge